LGOTI-IARD, Judge.
Plaintiff, B.F. Carvin Construction Company, Inc. through its owner, B.F. Carvin, appeals from a decision of the trial court granting summary judgment in favor of defendants, the Jefferson Parish Council and Garrity Construction, and dismissing plaintiffs suit against defendants. For reasons different than those given by the trial court, we affirm the decision dismissing plaintiffs suit against defendant.
FACTS AND PROCEDURAL HISTORY
In early 1997, the Jefferson Parish Council advertised for bids for the “Construction of the Westbank Bus Fleet Main *861 tenance Facility for the Department of Transit Administration.” The bids were opened on January 7, 1997. Plaintiff, B.F. Carvin Construction Company, Inc. (hereinafter “Carvin”), submitted the lowest bid totaling $1,856,000.00. Garrity Construction Corporation submitted the next lowest bid totaling $1,894,000.00.
|3On February 24, 1997, Carvin’s president received a letter informing him that Carvin was not a responsible bidder. On February 26, 1997, Carvin responded to the letter and also requested a hearing by the Bid Disqualification Review Committee. This hearing was set for March 31, 1997.
On March 29, 1997, the Parish Council passed a resolution awarding the contract for the project to Garrity, contingent upon the Bid Disqualification Review Committee upholding the disqualification of Carvin as a non-responsible bidder. After the hearing was held, the committee voted unanimously to confirm Carvin’s disqualification. On April 3, 1997, the Parish and Garrity executed a contract for the project.
Carvin instituted legal proceedings against the Parish and Garrity Construction on April 11, 1997 by filing a petition for Temporary Restraining Order, Petition for Declaratory Judgment, for Preliminary and Permanent Injunction and for Writ of Mandamus. Defendants filed a motion for summary judgment and exception of unauthorized use of summary proceedings, alleging that Carvin’s petition for injunctive relief, filed after the Parish and Garrity had executed the contract, was untimely. Carvin argued that because a resolution awarding the contract was passed prior to the hearing before the Bid Disqualification Review Committee, in was impossible for them to file for injunctive relief prior to the contract being awarded. The trial court denied the motion for summary judgment, granted the exception of unauthorized use of summary proceedings, and dismissed plaintiffs petition. Plaintiff appealed from that ruling.
On appeal, this court noted that plaintiffs petition, in addition to seeking injunc-tive relief and the writ of mandamus, stated claims which were to be ^determined via ordinary proceedings. This court upheld the granting of the exception of unauthorized use of summary proceedings; however, it amended that part of the judgment which dismissed plaintiffs petition to allow plaintiff leave to amend the petition and to proceed via ordinary proceedings, stating that:
... Our interpretation of the law is that seeking injunctive relief is not a prerequisite for the use of ordinary proceedings to seek nullification of a public works contract that has allegedly been wrongfully awarded. When damages are sought to be recovered by the unsuccessful bidder, a timely injunction must have been filed or the unsuccessful bidder must specifically plead why a timely suit for injunction was impossible. Whether or not a timely suit for injunction was impossible in this case is not before this Court.... Once the contract was awarded, Carvin’s sole remedy was through ordinary proceedings.
B.F. Carvin Const. v. Jefferson Parish, 97-913 (La.App. 5 Cir. 2/11/98), 707 So.2d 1326,
707 So.2d 1326,1327-1328.
After remand by this court, defendants filed a second motion for summary judgment, alleging that Carvin’s failure to timely file for injunctive relief barred any further proceedings. Carvin again argued that the Parish Council’s actions made the timely filing for injunctive relief impossible. After a hearing, the trial court granted defendants’ motion for summary judgment, and dismissed plaintiffs suit. This appeal followed.
UNTIMELINESS OF SUIT
Public Construction Contracts are governed by La. R.S. 38:2211 et seq. La. R.S. 38:2220 voids any contract for materials or supplies or for the construction of public works that is contrary to the provisions of *862 the public works contract law. La. R.S. 38:2220(B)[1] provides in pertinent part:
In ... Any interested person may bring suit in the District Court through summary proceedings to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this part, or through ordinary proceedings to seek appropriate remedy to nullify a contract entered into in violation of this part.
In Webb Const., Inc. v. City of Shreveport, 27,761 (La.App. 2 Cir. 12/6/95), 665 So.2d 653, the court considered the applicable jurisprudence and statutory law and said:
We do not read the 1990 amendment to R.S. 38:2220 B as excusing an unsuccessful bidder from the necessity of taking prompt action to remedy an alleged violation of public contracts law. The unsuccessful bidder must still attempt timely to enjoin the execution or performance of a contract, when the facts necessary for injunctive relief are known or are readily ascertainable by the bidder. If the bidder does not take such action, then he is precluded from recovering damages against the public body. Thus we view the rationale of Airline Const. Co. [v. Ascension Parish Sch. Bd., 568 So.2d 1029 (La.1990) ] as essentially unchanged by the amendment.
' We also do not read the 1990 amendment as permitting a suit for damages independent of the forms of relief specified in the statute. The apparent purpose of the amendment is to recognize a cause of action to enjoin or nullify a defective public contract. A timely (and successful) suit for injunction would block the award or performance of the contract and, for the most part, eliminate the unsuccessful bidder’s claim for damages. If an unsuccessful bidder cannot file a timely petition for injunction, as discussed in Airline, then the petition for relief must so specifically state, and it must request that the contract be declared null. Otherwise any claim for damages that the unsuccessful bidder might have will be considered waived.
The holdings of the Webb case were adopted by this court in Hard Rock Construction, Inc. v. Parish of Jefferson, 96-797 (La.App. 5 Cir. 1/28/97), 688 So.2d 134. In order for a unsuccessful bidder to proceed for damages, in the ^absence of a timely injunction, the bidder must show why a timely suit for injunctive relief was impossible.
As this court recognized previously, Carvin did not seek injunctive relief prior to the signing of the contract by the Parish and Garrity, and once the contract was awarded Carvin could no longer seek in-junctive relief, but was limited to seeking damages via an ordinary proceeding. To proceed with this ordinary proceeding, Carvin had to show why a timely filing for injunctive relief was impossible.
We find that Carvin has met this burden. The record reflects that, by the passage of Resolution No. 84195, the Council awarded the contract to Garrity on March 26, 1997, pending the disqualification of Carvin at the hearing set for March 31, 1997. The formal disqualification of Car-vin instantaneously confirmed the award of the contract to Garrity, leaving no time frame in which Carvin could file for injunc-tive relief.
The Parish argued, and the trial court found, that Carvin could have filed for injunctive relief at any time after February 24, 1997, when the bids were open and Carvin was informed that it was not a responsible bidder. However, Carvin exercised his legal option as provided in the *863 revised statutes; that is, he requested a hearing by the Bid Disqualification Review Committee. Until that hearing, Carvin’s disqualification was not final and Carvin did not have grounds for injunctive relief. Since the Council’s award of the contract to Garrity became effective immediately upon the confirmation of Carvin’s disqualification, there was no period of time between the disqualification and the award during which Carvin could have filed for injunctive relief.
|7 We find that the trial court erred in granting summary judgment in favor of the Jefferson Parish Council, and in dismissing Carvin’s action.
MERITS
In this appeal, Carvin argues that the procedural due process rights of the Fourteenth Amendment to the United States Constitution and Article 1, § 2 of the Louisiana Constitution were not met in this case.
The procedural due process considerations in a case involving public bids was reiterated by this court in J.W. Rombach v. Parish of Jefferson, 95-829 (La.App. 5 Cir. 2/14/96) 670 So.2d 1305, 1308-1309:
In Haughton Elevator Division v. State, etc., 367 So.2d 1161 (La.1979), the Louisiana Supreme Court recognized that the lowest responsive bidder has a protected interest, that of receiving the advertised contract, which cannot be derived without procedural due process. Likewise, the public has an interest in having the contract awarded expeditiously to the bidder who can most economically perform the work in a responsible manner. The court then set forth four procedural safeguards to be followed before a low bidder is disqualified as not responsible:
(1) An awarding authority which intends to disqualify a bidder must, prior to the award of the contract, give the bidder formal notice in writing that the authority is considering disqualifying the bidder from competing for the contract. This notice should specify the reasons for the proposed disqualification. The notification should contain specific language which puts the bidder on notice that the authority is considering disqualification, not mere questions about the bidder’s past performance on state contracts or its ability to perform in the future.
(2) The bidder must be given the opportunity to respond to the charges in writing and, in all cases in which feasible, the bidder should have the opportunity to meet with officials of the awarding authority to discuss the charges against the bidder and his response thereto. This informal ‘hearing’ does not necessarily include the right to call witnesses or cross-examine the persons who initiated the charges of irresponsibility.
|s(3) After this informal hearing, but before the award of the contract, the awarding authority must give the bidder formal written notice he has been disqualified from competing for the contract. This notice should list the specific reasons upon which the disqualification is based, although it may do so by reference to or incorporation of charges contained in the original notice.
(4) The ‘records’ of this disqualification proceeding must be preserved so as to form the basis for any subsequent judicial review which might be sought by the bidder. (This post-rejection judicial review, with the retroactive relief affordable, sufficiently protects the low bidder’s private interest against arbitrary rejection of its bid in the letting of the contract to a higher bidder).
Haughton, supra, at page 1166.
The procedural safeguards which were enumerated in Haughton were added to the Public Bid law by the legislature when it added subsection J to R.S. 38:2212, which provides:
If the public entity letting the contract proposes to disqualify any bidder, *864 on grounds that such bidder is not a ‘responsible bidder’ such public entity shall:
(1) Give written notice of the proposed disqualification to such bidder and include in the written notice all reasons for the proposed disqualification; and
(2) Give such bidder, who is proposed to be disqualified the opportunity to be heard at an informal hearing at which ' such bidder is afforded the opportunity to refute the reasons for the disqualification.
In this case, plaintiff argues that the hearing held was improper and comprised a denial of due process based on the fact that it was not before the awarding authority. Secondly, plaintiff alleges that the hearing committee’s written reasons for disqualification were insufficient under the Public Bid Law. Lastly, plaintiff argues that Resolution -No. 84195 was a tacit illegal instruction to the hearing committee.
[9 Carvin alleges denial of its procedural due process rights as set forth in Haughton Elevator Division v. State, etc., 367 So.2d 1161 (La.1979), because the disqualification hearing was held before the Bid Disqualification Review Committee, and not the Jefferson Parish Council. We do not agree.
Jefferson Parish Code of Ordinances, Sec. 2-863, et seq provides for the creation of a Bid Disqualification Review Committee, to review proposed disqualifications on the basis of: 1) Nonconformity or failure to comply with bid specifications; 2) Responsibility of bidder; and 3) Any and all other reasons provided in R.S. 38:2212 et seq and related articles. Sec. 2-866. The Bid Disqualification Review Committee shall be composed of a duly authorized representative from each of the following departments: finance, general services and procurement, and research and budget analysis.
Haughton sets forth the requirement that a disqualified bidder be given the opportunity to have an informal hearing before “officials of the awarding authority”. To fulfill this requirement, the Jefferson Parish Council enacted the above cited ordinances, to provide a committee to review bid disqualifications, and to conduct the informal hearing. Carvin was given the opportunity to discuss the charges against it with the appointing authority, through this committee. We do not find that Carvin’s procedural due process was violated because it met with the committee, which represented Jefferson Parish (the appointing authority) rather than the Jefferson Parish Council.
Carvin next alleges that the hearing committee’s written reasons for disqualification were insufficient under the public bid law.
|in In Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022 the United States Supreme Court discussed procedural due process requirements in administrative hearings. The Court said that:
The decision maker’s conclusion ... must rest solely on the legal rules and evidence produced at the hearing. To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on, though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law.
In Haughton, supra, the court stated that the notice of disqualification should state specific reasons, but that this requirement was met when the decision gave specific reasons, “by reference to or incorporation of charges contained in the original notice.”
After the hearing in this matter, the Bid Disqualification Review Committee:
... voted to uphold the proposed disqualification of the vendor because the vendor did not exercise proper management during construction/renovation at 1st Parish Court as generally noted in *865 the notification letter of February 24, 1997.
We find that this notice complies with the Goldberg v. Kelly case and the Haugh-ton case and was sufficient to give Carvin the specific reasons upon which his disqualification was based.
Carvin further argues that Resolution No. 84195, which awarded the contract to Garrity and disqualified Carvin “pending the determination of the Committee” was a tacit illegal instruction to the Bid Disqualification Review Committee.
In Initially, we note that the award pending disqualification procedure, as used in Resolution No. 84195, was the same as that in J.W. Rombach, supra. In that case, we found no violations of a bidder’s procedural due process rights.
In this case, we do not find that a different result is mandated because the disqualification hearing was in front of the Committee rather than the Jefferson Parish Council. Carvin suggests that the Committee’s “job” was to rubber stamp the Council’s decision, a suggestion denied by the Parish, who in brief points out that the Bid Disqualification Review Committee is a separate, autonomous board, not controlled by the Jefferson Parish Council. Furthermore, by Jefferson Parish Code of Ordinances, Sec. 2-865, the Bid Disqualification Review Committee is specifically ordered to review the proposed disqualification:
Pursuant to the requirements of the public bid law, R.S. 38:2212 et seq. and related statutes, any low bidder sought or proposed to be disqualified from any public contract or purchase order shall be afforded an opportunity for a review hearing of such proposed disqualification. The bid disqualification review committee shall conduct any such public hearing; and, following which, it shall affirm or reverse any proposed disqualification as to whether the proposed disqualifications justified and whether or not the low bidder should, in fact, be disqualified.
We find that Carvin’s procedural due process rights were not violated by the procedures used by Jefferson Parish and, therefore, Carvin’s allegations of error alleging due process violations are without merit.
Next, Carvin argues that there are limitations on the awarding authority’s discretion to disqualify a bidder and that there was no factual basis for its disqualification.
R.S. 38:2212, which requires that advertising and the obtaining of competitive bids, is a prohibitory law founded on public policy. It was enacted in |1?.the interest of tax paying citizens of this state, and its purpose is to protect these citizens against contracts awarded through favoritism, possibly involving exorbitant and extortionate prices. Haughton, supra; J.W. Rombach, supra. A public agency awarding a public works contract is vested with the power and discretion to determine the responsibility of the bidder and to reject all bids if none are satisfactory. However, the law does not allow the agency to arbitrarily select one bid, which is higher, and reject other bids, which are lower. The agency’s discretion must be exercised in a fair and legal manner and not arbitrarily. J.W. Rombach, supra.
On review of the agency’s exercise of discretion determining whether a bidder is the lowest responsible bidder, a court should not substitute its judgment for the good faith judgment of an administrative agency. The Parish’s reasonable good faith interpretation of its own specifications should not be disturbed by a court whose views might be different. Systems Plus, Inc. v. East Jefferson General Hosp., 94-83 (La.App. 5 Cir. 5/31/94), 638 So.2d 404; J.W. Rombach, supra.
The duty of this court is to determine whether the Bid Disqualification Review Committee acted arbitrarily and/or unfairly in disqualifying Carvin. The duty is not to second guess the credibility calls made *866 by the Bid Disqualification Review Committee, nor to upset the findings and decisions of the Committee where such findings are supported by the record. J.W. Rombach, supra.
After consideration of the above legal precepts, we find that defendant is entitled to summary judgment dismissing plaintiffs claims. Carvin contends that the evidence was insufficient to support the charges made by the Council concerning his lack of supervision over the project, as was noted in the [ ^disqualification letter sent to him on February 24, 1997. He contends that the Committee should have accepted the testimony of the architect, whom he alleges “gave Carvin high marks under the circumstances” over that of other testifying witnesses.
The Bid Disqualification Review Committee considered the testimony relative to each of the allegations against Carvin, and found that there was a lack of supervision. This court cannot second guess the credibility determinations made by the Bid Disqualification Review Committee in reaching its conclusions. We find that the Bid Disqualification Review Committee acted reasonably in its interpretation of the evidence and that they were not arbitrary and capricious in upholding the Parish’s decision to disqualify plaintiff.
CONCLUSION
As reflected in the above discussed reason, the decision of the trial court granting defendant’s motion for summary judgment is affirmed, although for reasons different than those given by the trial court.
AFFIRMED.

. Prior to the statutory amendment effective July 25, 1990, La. R.S. 38:2220(B) provided in pertinent part that "... any interested party possesses a right of action to bring suit for appropriate injunctive relief in the district court to nullify a contract entered into in violation of this part.”